T.C. Memo. 2013-36

UNITED STATES TAX COURT

GARY L. HOSKINS AND CYNTHIA HOSKINS, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3850-10.                          Filed February 4, 2013.

<u>Chad D. Hansen</u>, for petitioners.

<u>Emily J. Giometti</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and penalties with

respect to the joint income tax returns of petitioners as follows:

[*2]

| Year | Deficiency | Penalty<br>sec. 6662(a) |
|------|-----------|------------------------|
| 2006 | $43,721 | $8,744.20 |
| 2007 | 11,371 | 2,274.20 |

The issues for decision are (1) whether petitioners are entitled to deduct claimed rental real estate losses after section 469 passive loss limitations are considered ; (2) whether petitioners are entitled to all claimed deductions for real property expenses; and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a). Unless otherwise indicated all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, and during the years in issue, petitioners resided in Florida. During the years in issue, Cynthia Hoskins worked part time as a reservationist for U.S. Airways.

Gary L. Hoskins (petitioner) obtained a real estate sales license in Ohio and worked as a real estate agent in Ohio for a number of years before petitioners moved to Florida in 2002 when petitioner obtained his Florida real estate sales license. During the years in issue petitioner maintained his Florida real estate

[*3] sales license under a brokerage, Prudential Palms Realty, and worked approximately 40 hours per week as an independent contractor assisting other individuals with selling, purchasing, and leasing homes. In addition, as a licensed real estate salesperson, petitioner provided maintenance services for bank-owned properties approximately 15 to 20 hours per week. Petitioner was not licensed as a real estate broker during the years in issue, and he no longer maintained an Ohio real estate sales license.

During 2006 and 2007 petitioners owned four properties in Ohio (Glenrose, Hialeah, Martindale, and President) and six properties in Florida (Bentgrass, Founder, Mellon, Midnight #1, Midnight #2, and Trenton). In 2006 the four Ohio properties and three of the Florida properties (Bentgrass, Mellon, and Midnight #2) were rented long term. In 2006 the Midnight #1 property was rented as a short-term vacation rental for periods that, on average, did not exceed seven days.

The Founder and Trenton properties were under construction in 2006. Petitioners purchased the Founder property lot in 2005, and construction commenced that year. At that time, petitioners intended to use the Founder property as a personal residence. At some point in 2006, petitioners decided that they no longer wanted to use the Founder property as a personal residence and instead would sell the property upon completion of construction.

**[*4]**   In 2007 two of the Ohio properties were rented long term (Glenrose and President); the Hialeah and Martindale properties were not rented because they were being prepared for sale.  Three of the Florida properties were rented long term in 2007 (Bentgrass, Mellon, and Trenton), and two of the Florida properties were rented as short-term vacation rentals for periods that, on average, did not exceed seven days (Midnight #1 and Midnight #2).  The Founder property was not rented in 2007 because it remained under construction through the end of that year.

During the years in issue petitioners hired repair persons, such as plumbers, electricians, and carpet installers for repairs or remodeling work at the Ohio properties.  Petitioner visited Ohio in 2006 and 2007, generally staying with family.  Petitioner did not maintain records detailing his Ohio visits and did not account for the time contractors spent working on the properties.

Petitioners hired a professional management company to manage the Midnight #1 property during 2006 and 2007.  Petitioners did not hire a management company to manage the Midnight #2 property.

Petitioner paid various individuals and companies to perform services such as plumbing, electrical, pest control, and carpet cleaning at the other Florida properties.  Petitioner spent time at these properties performing property

[*5] maintenance such as lawn mowing, cleaning, painting, checking for water leaks, and changing air filters. He also paid bills associated with the properties and spent time locating tenants for some of the properties. Petitioner did not maintain contemporaneous daily time reports, appointment books, calendars, or similar documents that detailed his real estate activities. During 2006 and 2007 Cynthia Hoskins did not perform any work with respect to any of the properties.

During 2006 and 2007 petitioner received gross receipts of $399,172 and $188,595, respectively from his activities as a real estate agent. He reported $290,161 and $126,578 for 2006 and 2007, respectively, as net business income from real estate.

Petitioners included with their 2006 tax return a form entitled "Election to Treat All Interests in Rental Real Estate as a Single Rental Real Estate Activity", electing to treat all of their interests in rental real estate as a single real estate activity. Petitioners reported rental real estate losses of $174,646 on Schedule E, Supplemental Income and Loss, of their 2006 tax return with respect to 10 properties. Petitioners did not hold title to or have an ownership interest in one of the reported Florida properties (Pinyon) in 2006 or 2007 (petitioners loaned some money for the downpayment to the purchasers of this property expecting that they would be paid back and that, upon sale, petitioner would collect a real estate

[*6] commission through Prudential).  No real estate loss was reported with respect to the Founder property.  Petitioners used the losses reported on Schedule E to offset other income.

Petitioners reported rental real estate losses of $203,962 on Schedule E of their 2007 tax return with respect to 11 properties (the 10 properties they owned in 2007 and the Pinyon property).  Petitioners used these losses to offset other income.

The IRS examined petitioners' 2006 and 2007 tax returns.  During the examination petitioner stated that he spent approximately 520 hours during 2006 and 520 hours during 2007 working on petitioners' properties, performing such activities as painting, lawn mowing, and cleaning the properties to prepare them for renting.  Petitioner did not provide any log or other documentation to support his statements, nor did he offer any records detailing repairs or maintenance performed by him or by other individuals.

The IRS determined that the losses petitioners reported for 2006 and 2007 with respect to the Ohio and Florida properties were limited by the section 469 passive activity rules and that, after audit adjustments, petitioners' adjusted gross income is above the limit for a partial deduction for 2006 and their deduction is limited for 2007.  See sec. 469(i).

**[*7]** The IRS also disallowed deductions claimed for depreciation, insurance, mortgage interest, and other expenses, such as homeowner association dues with respect to the Pinyon and Trenton properties for 2006 and the Founder and Pinyon properties for 2007, and explained in the notice of deficiency that "[p]roperties held for investment and properties not completed for occupancy are not eligible for expenses to be deducted."

Additionally, respondent disallowed cost of goods sold expenses that petitioners claimed for 2007 on the Schedule C, Profit or Loss From Business, for petitioner's real estate sales associate activities. Petitioners did not dispute this adjustment in the petition or in their pretrial memorandum. Further, petitioners neither addressed this issue at trial nor provided any evidence to support the claimed deductions. As a result, this issue is deemed conceded. See Rules 34(b)(4), 149(b).

OPINION

Generally, the taxpayer bears the burden of proving entitlement to any deductions claimed. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940). This burden may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any relevant factual issue and meets other conditions, including maintaining

**[*8]** required records.  See sec. 7491(a)(1).  Petitioners have not established their compliance with section 7491(a).  Accordingly, petitioners bear the burden of proof.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212; however, section 469 generally disallows any passive activity loss.  Sec. 469(a).  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate, sec. 469(c)(1), or to the extent provided in regulations, any activity with respect to which expenses are allowable as a deduction under section 212, sec. 469(c)(6)(B).  Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).  Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial.  Sec. 469(h)(1).

An exception to the rule that a rental activity is per se passive is found in section 469(c)(7), which provides that the rental activities of a taxpayer in real property trades or businesses are not per se passive activities under section 469(c)(2) but are treated as a trade or business subject to the material participation

[*9] requirements of section 469(c)(1). <u>See</u> sec. 1.469-9(e)(1), Income Tax Regs. A taxpayer may qualify as a real estate professional if: (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint return, either spouse must satisfy both requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

For purposes of determining whether a taxpayer is a real estate professional, a taxpayer's material participation is determined separately with respect to each rental property, unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs. Petitioners made an election in 2006, which remained in effect for 2007, to treat their rental properties as a single activity. <u>See</u> sec. 1.469-9(g)(1), Income Tax Regs.

**[\*10]** Section 1.469-9(b)(3), Income Tax Regs., defines rental real estate as "any real property used by customers or held for use by customers in a rental activity within the meaning of § 1.469-1T(e)(3)." Section 1.469-1T(e)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988), states that, except as otherwise provided, an activity is a rental activity for a taxable year, if "[d]uring such taxable year, tangible property held in connection with the activity is used by customers or held for use by customers". See also sec. 469(j)(8). As provided in section 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., supra, an "activity involving the use of tangible property is not a rental activity for a taxable year if for such taxable year * * * [t]he average period of customer use for such property is seven days or less".

The parties agree that in 2006 Midnight #1 was not rental real estate and that in 2007 both Midnight #1 and Midnight #2 were not rental real estate because the average period of customer use was seven days or less during those periods. Thus, these properties are not rental activities for purposes of section 469(c)(2) and are considered a trade or business or an income-producing activity. See Bailey v. Commissioner, T.C. Memo. 2001-296. Additionally, the parties agree that in 2007, when the Martindale property was being prepared for sale, it was not rental real estate.

[*11] Respondent contends that the following properties should also not be considered rental real estate because they were not used or held for use by customers: (1) in 2006--Founder, Pinyon, and Trenton, and (2) in 2007--Founder, Hialeah, and Pinyon. The record reflects that none of these properties were used by customers or held for use by customers during these periods. See sec. 1.469-9(b)(3), Income Tax Regs. Accordingly, these properties are not considered rental real estate for the identified years, and may not be grouped with rental activities for purposes of determining whether petitioner materially participated in the rental real estate activity. See sec. 1.469-9(e)(3)(i), Income Tax Regs.

When determining a taxpayer's material participation, section 1.469-9(e)(3), Income Tax Regs., provides that rental real estate activities cannot be grouped with any other activity of the taxpayer. Petitioner's activities as a real estate sales associate assisting other individuals with listing, selling, and purchasing homes and maintaining bank-owned properties are separate from his activity as the owner of residential real estate properties. Petitioner does not own or manage the residential real estate properties as part of his profession as a real estate sales associate. Accordingly, petitioner's rental real estate activity remains subject to the material participation requirement of section 469(c)(1).

**[*12]** A taxpayer can establish material participation by satisfying any one of seven tests provided in the regulations. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see Miller v. Commissioner, T.C. Memo. 2011-219; Bailey v. Commissioner, T.C. Memo. 2001-296. Petitioners contend that petitioner satisfies one or more of the following tests:

> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;
>
>     *        *        *        *        *        *        *
>
> (5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;
>
>     *        *        *        *        *        *        *
>
> (7) Based on all of the facts and circumstances * * *, the individual participates in the activity on a regular, continuous, and substantial basis during such year.
> [Sec. 1.469-5T(a), Temporary Income Tax Regs., supra.]

[*13] With respect to the evidence that may be used to establish hours of participation, section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

In arguing that he is a real estate professional and materially participated in his rental real estate activity, petitioners rely on petitioner's testimony that he worked a total of approximately 65 to 70 hours during 2006 and 2007, with approximately 40 hours per week devoted to his work as a real estate sales associate, 15 to 20 hours spent managing the bank-owned properties, and the remaining 10 to 15 hours devoted to petitioners' properties. For petitioners' grouped properties that are considered rental real estate activity, petitioner claimed that he spent 331 hours in 2006 and 212 in 2007 participating in the rental real estate activity, but admitted that he kept no records, such as calendars or logs, detailing his time and activities. Petitioner's testimony concerning his participation consisted only of estimates based on recollections of events that had

**[*14]** taken place several years before. Petitioner's subjective time estimates suffer from a lack of contemporaneous verification by records or other estimates. See id.

This Court has previously noted that while the regulations are somewhat ambiguous concerning the records to be maintained by taxpayers, we are not required to accept a postevent "ballpark guesstimate", or the unverified, undocumented testimony of taxpayers. See Moss v. Commissioner, 135 T.C. 365, 369 (2010); Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185; Shaw v. Commissioner, T.C. Memo. 2002-35.

Petitioner presented no evidence demonstrating that his participation was substantially all of the participation by all individuals in the rental activity or that his participation was not less than that of any other individual. The record reflects that with respect to the Ohio properties, a hired individual performed maintenance work and additional contractors were hired to undertake other maintenance and remodeling projects at these properties. Petitioner furthermore did not produce any evidence showing that he materially participated in the rental activity for any 5 taxable years during the 10 taxable years immediately preceding 2006 and 2007.

We cannot conclude that petitioner participated in his rental activity "on a regular, continuous, and substantial basis", as contrasted to a sporadic basis,

[*15] during either year.  See sec. 1.469-5T(a)(7), Temporary Income Tax Regs., supra.   The preponderance of the evidence indicates that his rental activities were the per se passive activities that are addressed by the limitations of section 469. Because he did not materially participate in the rental activities, they cannot be combined with his activities as a real estate salesman or manager as an agent of others, and his losses on the rental properties may not be used to offset his earnings from Prudential Palms Realty or his income from managing bank-owned properties. Because he did not materially participate in the rental activities, we need not decide whether petitioner's activities as a licensed sales agent qualify as a "real property trade or business" under section 469(c)(7)(B) and (C).

Real Estate Activities Not Grouped as Rental Real Estate Activities

Section 212 allows as a deduction all of the ordinary and necessary expenses paid during the year for the production or collection of income or for the management, conservation, or maintenance of property "held for the production of income", including the rental of real property.  See sec. 1.212-1(b), Income Tax Regs.  Property held for the production of income also includes property expected to appreciate over time, even though the property generates no current income.  Id. Sections 162 and 212 are subject to the passive activity loss limitations.  See sec. 469(c)(6).  Thus with respect to petitioners' real estate activities that are not

**[*16]** grouped with the rental activities, the losses are subject to the passive activity loss limitations under section 469, unless petitioners can prove that petitioner materially participated in the nonrental real estate activities.

For essentially the same reasons stated with respect to the rental activities, we conclude that petitioners have not shown that petitioner materially participated in any of the real estate activities not considered grouped rental activities, beyond what respondent has conceded. Petitioners produced no records that substantiated petitioner's claims regarding his time spent in these real estate activities, and his testimony at trial consisted only of recollections and estimates of time recounted years after the fact.

Petitioners also did not produce any evidence showing that petitioner's participation was substantially all of the participation by all individuals in the activities or that his participation was not less than that of any other individual. The record suggests otherwise. Petitioners paid an onsite management company to manage the Midnight #1 property; the Trenton and the Founder properties were under construction, which would have necessitated the involvement of contractors in those activities; the Pinyon property was owned by others who would have participated in the activity to some degree; and individuals and contractors in Ohio were hired to perform tasks related to the Hialeah and Martindale properties.

**[*17]** Furthermore, petitioner did not produce any evidence regarding his material participation in the activities during the years before 2006 and 2007.  Based on the record, petitioners' real estate activities that are not grouped with the rental activities for the relevant periods are subject to the passive activity loss limitations under section 469.

Petitioners claim that depreciation and certain expenses that they paid are deductible under section 212 with respect to the Trenton property in 2006, the Founder property in 2007, and the Pinyon property for both 2006 and 2007.

Section 162(a) allows a deduction for "ordinary and necessary" business expenses.  Under section 263(a)(1) expenditures for "new buildings or for permanent improvements or betterments made to increase the value of any property or estate" are capital expenditures and are not immediately deductible.  Generally, a taxpayer must add a capital expenditure to basis.  Sec. 1.263(a)-1(b), Income Tax Regs.  And a taxpayer's cost recovery of capital expenditures, if allowable, will generally come over time through deductions for amortization or depreciation.  See, e.g., secs. 167, 168, and 169.  The Trenton property was under construction during 2006 as was the Founder property during 2006 and 2007.  Accordingly, the expenses incurred during those years are not currently deductible.

**[*18]** Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business, or property held for the production of income. Depreciation deductions "are allowed to investors who have placed capital at risk through the purchase of an asset used in trade or business or held for production of income". See Durkin v. Commissioner, 872 F.2d 1271, 1276 (7th Cir. 1989), aff'g T.C. 87 T.C. 1329 (1986). The period for deprecation of an asset begins when the asset is placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. As a general rule, an asset "is clearly considered as placed in service when it is acquired and put into use" in a trade or business or income-producing activity. Piggly Wiggly S., Inc. v. Commissioner, 84 T.C. 739, 746-748 (1985), aff'd on another issue, 803 F.2d 1572 (11th Cir. 1986).

Petitioners presented no evidence that the Trenton and Founder properties had been placed in service during or before the years in issue. Thus, petitioners are not entitled to the claimed depreciation deductions for the Trenton property for 2006 and the Founder property for 2006 and 2007.

As to the Pinyon property, petitioners held no ownership or other legal interest in that property during 2006 or 2007, and petitioners' expense deductions claimed in connection with this property could not have been "for the

[*19] management, conservation, or maintenance of property held for the production of income." See sec. 212(2) (emphasis added); see also, e.g., Perret v. Commissioner, 55 T.C. 712, 717 (1971). In addition, with respect to section 212(1), which allows a deduction for expenses paid or incurred for the production or collection of income, petitioner presented no evidence that his expenses with regard to the Pinyon property were ordinary and necessary, as required by section 212. Also, because of the absence of legal ownership, petitioners' depreciation deductions claimed for the Pinyon property must be disallowed. See, e.g., Arevalo v. Commissioner, 124 T.C. 244, 251-252 (2005), aff'd, 469 F.3d 436 (5th Cir. 2006).

Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. Higbee v. Commissioner, 116

**[*20]** T.C. 438, 446-447 (2001). Because the understatement of income tax for the years in issue is substantial, respondent has satisfied the burden of producing evidence that the penalties are appropriate.

Once the Commissioner has met the burden of production the taxpayer must come forward with persuasive evidence that the penalty is inappropriate because he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have not addressed the reasonable cause or good faith defense to the section 6662(a) penalty. See sec. 6664(b) and (c); Higbee v. Commissioner, 116 T.C. at 448-449. They simply assert that they were entitled to the deductions they claimed. Petitioners' income tax returns for 2006 and 2007 were prepared by a professional tax preparer, but they provided no details regarding what information they gave to the tax preparer or what the tax preparer's advice was. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). We conclude, therefore, that petitioners have failed

**[*21]** to satisfy their burden of proving that they are not liable for the section 6662(a) penalty for tax years 2006 and 2007.

In reaching our conclusions, we have considered all arguments made by the parties and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concession,

<u>Decision will be entered</u>

<u>under Rule 155</u>.