T.C. Memo. 2011-219

UNITED STATES TAX COURT

TOM AND NANCY MILLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21655-09.                    Filed September 8, 2011.

<u>Michael J. Low</u>, for petitioners.

<u>John M. Wall</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes of $28,357 and $50,036 for 2005
and 2006 (years at issue), respectively, and $5,671.40 and
$10,007.20 accuracy-related penalties under section 6662(a) for
those years.  With respect to 2005, petitioners dispute the
entire deficiency and penalty except for $8,998 of disallowed

interest expense and a $17,350 rental activity loss from a property at Avenida Monteflora in Desert Hot Springs, California.[1]  With respect to 2006, petitioners dispute the entire deficiency and penalty except for an $18,596 rental activity loss from the property at Avenida Monteflora.

We are asked to decide two issues.  The first issue is whether petitioners' rental real estate losses for the years at issue were passive activity losses subject to the limitation under section 469(a).[2]  We hold that petitioners' losses were not passive activity losses for two of their rental properties but were passive activity losses for the remaining four properties. The second issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a).  We hold that they are not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and accompanying exhibits are

---

[1]The parties stipulated that petitioners failed to report $8,998 of interest income for 2005 and that they did not materially participate in the rental real estate activity reported for the property at Avenida Monteflora in Desert Hot Springs, California during the years at issue.

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

incorporated by this reference.  Petitioners resided in Petaluma,
California at the time they filed the petition.

Tom Miller (Mr. Miller), the older child of German
immigrants, had an interest in building, drafting and
architecture growing up.  He pursued his interest in boats,
however, after his father met an instructor at the California
Maritime Academy.

Mr. Miller graduated from the California Maritime Academy in
1980 with a bachelor of science degree in nautical industrial
technology.  He quickly left his first job, which required him to
spend months at sea, because it kept him away from Nancy Miller
(Mrs. Miller).[3]  He took a job with a tugboat company that
allowed him to be nearer to Mrs. Miller, who is now his wife of
27 years, and to return to the San Francisco Bay area.
Petitioners have two daughters.

At the age of 29, Mr. Miller became a partner in the San
Francisco Bar Pilots Association (SFBPA) and began piloting
commercial seagoing vessels for SFBPA.[4]  During the years at
issue, Mr. Miller piloted client vessels for the SFBPA, including
large container ships, passenger cruise ships and large military

---

[3]Mrs. Miller is a bookkeeper by training.

[4]The SFBPA is a partnership for Federal income tax purposes.
During the years at issue, SFBPA was limited, by statute, to 60
pilots.  All SFBPA pilots were equal partners of the SFBPA and
received equal distributions.

ships. He piloted these client vessels from 13 miles at sea, outside the San Francisco Bay Channel, throughout the San Francisco, San Pablo and Suisun Bays, including the Sacramento and San Joaquin Rivers.

Mr. Miller's schedule as an SFBPA pilot requires that he work seven days and then have seven days off. Mr. Miller generally is not required to actually work for all of his seven days "on." His schedule is also somewhat flexible and predictable. SFBPA pilots know roughly when they will have to work during their "on" time and can trade turns in the pilot rotation, subject to limitations.

Despite his piloting work, Mr. Miller did not lose his interest in building and drafting. He acquired a class B general contractor's license in 1997, which he held during the years at issue. He provided construction services for clients in 2005, including kitchen remodeling, replacing home siding, building decks, building fences and replacing windows. He also drafted and worked on approximately a dozen building plans for houses, including during the years at issue.

Petitioners owned six rental real estate properties during 2005 and seven during 2006. Petitioners conceded that they did not materially participate in the rental real estate activity with respect to a property at Avenida Monteflora, and therefore the losses from that property are passive activity losses.

Petitioners argue, however, that the losses from their remaining rental properties are not passive activity losses.

For each of the rental properties at issue, petitioners found tenants by placing ads and pictures on Craigslist.[5] Mrs. Miller prepared the written leases for the properties, which petitioners both reviewed and signed. Petitioners collected the rents. Petitioners also spent substantial time researching and bidding on various rental real estate properties, including during the years at issue.[6] Mr. Miller created contemporaneous timesheets, detailing time spent on his rental real estate activities and construction business.[7] The parties provided to

---

[5]Craigslist is a network of online communities featuring online classified advertisements for housing, jobs, goods, services, romance, local activities, advice and more. Craigslist sites, found at http://craigslist.org, serve hundreds of cities across the United States and in dozens of countries, attracting millions of visitors every month.

[6]Mrs. Miller described some of the time-consuming process and challenges of researching country homes. In addition to online research, petitioners would travel to the locations, research zoning laws and meet with the health inspector regarding water wells and septic systems. On the basis of their research, petitioners sometimes chose not to bid on the properties they researched. When petitioners did make an offer, they did not always acquire the property, for example when there was a higher bidder.

[7]As with his piloting logs, Mr. Miller did not record administrative time spent on his rental real estate activities. Mr. Miller's real estate administrative work included planning construction and repair jobs, amending timelines and ordering materials.

the Court a number of other timesheets and summaries of petitioners' time allocation as well.[8]

Petitioners' first rental property was on Pepper Road in Petaluma, California. Petitioners bought five acres of land surrounded by dairy ranches in 1990, and Mr. Miller built two homes on the land. Mrs. Miller assisted her husband with the interior design of the homes. Petitioners resided in one of the homes and continued to reside in that home at the time of trial. Petitioners leased the second home (Pepper Road property). Mr. Miller performs maintenance work for the Pepper Road property, including maintenance of the well, septic system and all or most of the yard. Mr. Miller also performed repair work on the Pepper Road property, including repairs to the fence, washing machine, garbage disposal and back door.

Petitioners and Martin Miller, Mr. Miller's brother, owned and leased a single-family home on Morning Glory Drive in Petaluma, California from 2000 through the years at issue (Morning Glory property). Petitioners held an 85-percent interest in the Morning Glory property until September 2006, when they acquired Martin Miller's 15 percent interest. Martin Miller resided next door to the Morning Glory property during the years

_____

[8]The Court notes that petitioners' timesheets had some inaccuracies and were imperfect. Nevertheless, the timesheets provided useful guidance when coupled with petitioners' testimony.

at issue. He would occasionally mow the lawn at the Morning Glory property, although the tenants would usually maintain the property and mow the lawn. Martin Miller had a new carpet installed at the Morning Glory property in 2005. Mr. Miller and Martin Miller, along with an associate of Mr. Miller, installed a fence on one side of the Morning Glory property in 2005. Martin Miller hired a fence company to build a fence on the other side of the Morning Glory property in 2006, and Mr. Miller reimbursed Martin Miller for some of the costs.

Petitioners purchased a single-family home on Lind Avenue in Clovis, California in June 2005 (Lind property). The Lind property is in a community governed by a homeowner's association. Homeowners in this community pay monthly homeowner's association fees for maintenance of common areas and mowing and maintenance of the front yards of homes within the community. Petitioners rented the Lind property during the years at issue.

Petitioners purchased a single-family home on N. Price Avenue in Fresno, California in October 2005 (Price property). Petitioners hired a landscaper to provide weekly mowing and gardening services for the Price property for $65 per month. Petitioners rented the Price property in 2006.

Petitioners and Martin Miller purchased a single-family home on E. Emerald Avenue in Fresno, California in June 2005 (Emerald property). Petitioners and Martin Miller held equal interests in

the Emerald property.  Petitioners hired and paid an individual to provide bi-monthly mowing and gardening services for the Emerald property.  Petitioners rented the Emerald property during the years at issue.

Petitioners purchased a single-family home on Bennett Valley Road in Santa Rosa, California in October 2006 (Bennett Valley property).  Mr. Miller and his subcontractor, Delmont Bogart (Mr. Bogart), made a number of improvements to the Bennett Valley property.  The improvements included building a retaining wall, replacing decks, remodeling a bathroom, installing new gutters, replacing the plumbing and repairing the furnace.  Mr. Bogart described Mr. Miller as a workaholic who worked on the home after his piloting job and performed manual labor alongside him for each project on the property.  Petitioners leased the Bennett Valley property.

In addition to Mr. Bogart, other witnesses described Mr. Miller's work ethic as extraordinary.  A friend, pilot and partner of Mr. Miller's at SFBPA testified to his "one in a million" work ethic, saying that he did not know anyone who worked harder.  Mrs. Miller testified that she had to go to Mr. Miller's construction sites to see her husband.

Mrs. Miller prepared petitioners' joint returns for the years at issue.  Petitioners did not make an election to treat

all their interests in rental real estate as one activity under section 469(c)(7)(A) before or during the years at issue.

Respondent issued the deficiency notice to petitioners, disallowing the Schedule E rental real estate losses for the years at issue and determining the deficiencies and accuracy-related penalties for those years. Petitioners timely filed a petition.

OPINION

We must decide whether a pilot of commercial seagoing vessels spent more time on his construction and rental real estate activities than on piloting, and whether he and his wife materially participated in certain rental real estate activities so that they may deduct rental real estate losses for the years at issue. We begin with the burden of proof.

Determinations of the Commissioner in a deficiency notice are presumed correct, and taxpayers bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are generally a matter of legislative grace, and taxpayers bear the burden of proving entitlement to claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The burden to disprove a claimed deduction may shift to the Commissioner if the taxpayers prove that they have satisfied certain conditions. Sec. 7491(a); Snyder v. Commissioner, T.C.

Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995). Petitioners have neither claimed nor shown that they complied with the substantiation requirements of section 7491(a). The burden of proof, therefore, remains on petitioners. See Rule 142(a).

Petitioners claimed losses of $71,464 and $143,091 from their rental real estate activities for the years at issue. The deduction of passive activity losses is generally suspended. Sec. 469(a). A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities. Sec. 469(d)(1). A passive activity includes the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A rental activity generally is treated as a per se passive activity. Sec. 469(c)(2), (4).

A taxpayer may, however, avoid having his or her real estate activity classified as a per se passive activity if the taxpayer is a qualifying real estate professional and satisfies the material participation requirements of section 469(c)(1). A taxpayer will qualify as a real estate professional if: (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (ii) such taxpayer performs more

than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates.  Sec. 469(c)(7)(B).

A taxpayer may establish his or her participation in an activity by any reasonable means.  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  This Court has acknowledged that "reasonable means" is interpreted broadly and that the temporary regulations may not provide precise guidance.  Goshorn v. Commissioner, T.C. Memo. 1993-578.  Nevertheless, a postevent "ballpark guesstimate" will not suffice.  See Lee v. Commissioner, T.C. Memo. 2006-193; Goshorn v. Commissioner, supra.

Where, as here, a joint return has been made, the foregoing real estate professional requirements are satisfied if either spouse separately satisfies those requirements.  Sec. 469(c)(7)(B).  Thus, if Mr. Miller meets the foregoing requirements, petitioners' rental activities are not per se passive and the normal passive activity loss rules of section 469(c)(1) will apply.  We now consider whether Mr. Miller qualifies as a real estate professional.

On the basis of the record and testimony provided at trial, we find that Mr. Miller has established that he spent more than 750 hours performing significant construction work as a contractor and on his rental real estate activities.  We find

that Mr. Miller spent more time on his construction work and rental properties than he did piloting vessels in the years at issue.

Respondent highlights that Mr. Miller was a partner in the SFBPA. Respondent also notes that Mr. Miller occasionally spent additional time on SFBPA-related activities outside of piloting. Nevertheless, we find petitioners' testimony and evidence compelling. Mr. Miller completed a number of significant construction projects, both as a contractor and as a landlord, in the years at issue. He also performed a number of additional real estate tasks including researching properties, bidding on properties, finding tenants, collecting rent and performing maintenance work at rental properties. Mr. Miller presented contemporaneous work logs for his construction and rental activities and provided compelling testimony and witnesses. Thus, we find that Mr. Miller is a qualified real estate professional within the meaning of section 469(c)(7)(B).

Having found that Mr. Miller is a qualified real estate professional, we now consider whether petitioners materially participated in their rental activities. For this purpose, each interest in rental real estate is treated as a separate rental real estate activity unless the qualifying taxpayer makes an election to treat all interests as a single activity. See sec. 469(c)(7)(A). Petitioners did not make such an election. Also

for this purpose, we must consider both spouses' efforts. Sec. 469(h)(5); sec. 1.469-9(c)(4), Income Tax Regs. Thus, we consider whether petitioners' joint efforts amount to material participation with respect to each rental real estate activity.

Material participation is defined generally as regular, continuous and substantial involvement in the business operations. Sec. 469(h)(1). A taxpayer can establish material participation by satisfying any one of the seven tests provided in the regulations. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988); see Akers v. Commissioner, T.C. Memo. 2010-85. Two tests are particularly relevant here.

A taxpayer is treated as materially participating in an activity if his or her participation in that activity during the taxable year constitutes substantially all of the participation[9] in the activity for that year. Sec. 1.469-5T(a)(2), Temporary Income Tax Regs., supra. A taxpayer is also treated as having materially participated if the taxpayer participates in the activity for more than 100 hours during the taxable year and the taxpayer's participation in the activity for the taxable year is not less than the participation of any other individual. Sec.

_____

[9]"Participation" generally means any work done in an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f)(1), Income Tax Regs.

1.469-5T(a)(3), Temporary Income Tax Regs, 53 Fed. Reg. 5726 (Feb. 25, 1988).

We are satisfied that petitioners participated in the rental real estate activities at the Pepper Road property and the Bennett Valley property for over 100 hours per year for the relevant years.[10] We are also satisfied that their participation was not less than the participation of any other individual for those years. It follows, and we hold, that petitioners materially participated in the rental real estate activities at the Pepper Road property and the Bennett Valley property in the relevant years and the deductions attributable to those activities are not subject to limitation under section 469.

Petitioners have not shown, however, that they participated in the rental real estate activities at the Morning Glory property, the Lind property, the Price property or the Emerald property for over 100 hours per year for the relevant years. They also have not carried their burden of proving that their participation in the rental real estate activities at each of these four properties constitutes substantially all of the participation for those properties in the years at issue. We particularly note Martin Miller's participation at the Morning Glory property, which is adjacent to his home. We sustain

---

[10]As aforementioned, petitioners did not own the Bennett Valley property in 2005.

respondent's disallowance of losses with respect to the real estate activities at the Morning Glory property, the Lind property, the Price property and the Emerald property for the years at issue.

We now address whether petitioners are liable for the accuracy-related penalty for a substantial understatement of income tax for each year at issue. A taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax. Sec. 6662(a), (b)(2). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs. We find that respondent has met his burden of production if Rule 155 computations show petitioners have a substantial understatement of income tax. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Jarman v. Commissioner, T.C. Memo. 2010-285.

A taxpayer is not liable for an accuracy-related penalty, however, if the taxpayer acted with reasonable cause and in good faith with respect to any portion of the underpayment. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances

including the taxpayer's efforts to assess his or her proper tax liability.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners state in their petition that they acted with reasonable cause and in good faith, and we so find.  Petitioners prevailed on the threshold question of whether Mr. Miller qualifies as a real estate professional.  They also prevailed on the question of whether they materially participated with respect to two of their rental properties.  As for the remaining properties, petitioners provided evidence and gave credible testimony but simply failed to meet their burden of proof. Nevertheless, petitioners provided extensive records of their rental real estate activities, including contemporaneous timesheets.  We find that petitioners acted with reasonable cause and in good faith in claiming rental real estate losses for the years at issue.  Accordingly, we decline to impose a penalty upon petitioners.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
