T.C. Memo. 2018-88

UNITED STATES TAX COURT

SHANE V. ROBISON AND ROBIN S. ROBISON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5339-15, 25120-16.          Filed June 19, 2018.

<u>Edward I. Kaplan</u>, for petitioners.

<u>Bryant W. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income tax and penalties as follows:

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $262,026 | $52,405 |
| 2011 | 229,252 | 45,850 |
| 2012 | 217,416 | 43,483 |
| 2013 | 184,846 | 36,969 |
| 2014 | 136,184 | 27,237 |

Respondent has now conceded the section 6662(a) penalties. The issues for decision are as follows: (1) whether petitioners were engaged in a ranching activity with the objective of making a profit within the meaning of section 183; and (2) if petitioners were engaged in a ranching activity with the objective of making a profit within the meaning of section 183, whether petitioners materially participated in the ranching activity within the meaning of section 469. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Utah when their petitions in these consolidated cases were filed.

[*3]  Petitioner Robin S. Robison (R. Robison) was a retired physical therapist for the years in issue.  She previously started and operated her own successful physical therapy practice.  Petitioner Shane V. Robison (S. Robison) had a highly successful career working for a number of technology companies in Silicon Valley.  For 2010 and until November 2011, he worked as a successful computer science executive at Hewlett Packard in Silicon Valley.  In November 2011, he retired from Hewlett Packard.  He continues to serve on boards and as an adviser to technology-based corporations.  During the years in issue, S. Robison's wages and salary were as follows:

| Year | Wages/salary |
|------|--------------|
| 2010 | $10,531,957 |
| 2011 | 2,800,875 |
| 2012 | 4,369,496 |
| 2013 | 1,410,432 |
| 2014 | 1,927,874 |

The Ranch

In 1999 petitioners purchased a 410-acre ranch in a remote area of southern Utah at an elevation of approximately 6,700 feet.  The cost of the Ranch was approximately $2 million.  In 2000 and 2009 petitioners acquired additional

[*4] acreage near and surrounding the property, increasing the total property to more than 500 acres. In 2000 petitioners formed Robison Ranch, LLC (Robison Ranch). Petitioners each own 50% of Robison Ranch. S. Robison has a family background in ranching and farming although neither petitioner had ever previously operated a ranch.

Upon purchasing Robison Ranch, petitioners were aware that it would require significant time and capital investment on account of its poor physical condition. Robison Ranch first operated as a horse breeding and training operation with a small cattle herd but shifted its focus entirely to cattle ranching in approximately 2000. Petitioners retroactively prepared business plans for Robison Ranch for the years in issue.

From 2000 to 2015 petitioners never made a profit from Robison Ranch's ranching activities. The property is currently listed for sale for $10 million. For the years in issue Robison Ranch filed Forms 1065, U.S. Return of Partnership Income, and claimed its loss deductions on its Schedules F, Profit or Loss From Farming. Petitioners claimed Robison Ranch's loss deductions for the years in issue on their Schedules E, Supplemental Income and Loss, in the respective amounts of $657,356, $640,769, $606,633, $493,194, and $420,798. From 2000 to 2015 Robison Ranch reported over $9 million in losses on its Federal income

[*5] tax returns. From 2000 to 2015 Robison Ranch reported the following on its

Federal income tax returns:

| Year | Income | Expenses | Net income/(loss) |
|------|--------|----------|-------------------|
| 2000 | -0- | $198,249 | ($198,249) |
| 2001 | $3,385 | 431,154 | (427,769) |
| 2002 | 25,363 | 518,728 | (493,365) |
| 2003 | 8,355 | 819,241 | (810,886) |
| 2004 | 43,246 | 588,400 | (545,154) |
| 2005 | 49,408 | 719,435 | (670,027) |
| 2006 | 58,385 | 728,322 | (669,937) |
| 2007 | 58,103 | 641,105 | (583,002) |
| 2008 | 90,737 | 701,260 | (610,523) |
| 2009 | 60,604 | 800,452 | (739,848) |
| 2010 | 91,290 | 748,646 | (657,356) |
| 2011 | 70,983 | 711,752 | (640,769) |
| 2012 | 121,090 | 727,723 | (606,633) |
| 2013 | 166,971 | 660,165 | (493,194) |
| 2014 | 215,701 | 636,499 | (420,798) |
| 2015 | 126,082 | 598,597 | (472,515) |

After the years in issue petitioners created activity logs for their time spent

at Robison Ranch.  R. Robison reported spending in excess of 1,500 hours on the

ranching activity during each year in issue.  S. Robison reported spending in

**[*6]** excess of 800 hours on the ranching activity during each year in issue. When at the ranch petitioners would generally perform whatever work was needed, such as maintenance work, cleaning, and the feeding and branding of livestock. Petitioners would also perform managerial duties and oversee operations. Petitioners were in charge of hiring and managing all ranch employees. S. Robison was responsible for all top-level decisionmaking. R. Robison, Robison Ranch's chief financial officer, was responsible for all accounting and bill paying aspects, preparing annual profit and loss statements, and all of its employment tax filings and insurance policy needs. She used QuickBooks for Robison Ranch's financial recordkeeping. Petitioners employed a certified public accountant to prepare the tax returns for Robison Ranch for the years in issue. Their personal finances were maintained separately from Robison Ranch's finances.

Petitioners employed a ranch manager and a ranch hand during the years in issue. Both employees lived on site and signed employment and lease agreements. During the years in issue petitioners had two different ranch managers. Daniel Reeder served as ranch manager until 2012. Tabor Dahl, initially hired in 2011 to manage and train the ranch's horses, was promoted to ranch manager for the remaining years in issue. Both Reeder and Dahl had formal training in agriculture.

**[\*7]** Dahl was raised on an unregistered cattle ranch and had experience working on ranches but had never previously managed a ranch.

Petitioners held weekly meetings with Robison Ranch's employees. The meetings were held in person if petitioners were on site, and via conference call when they were not. Minutes from the weekly meetings were kept and distributed to participants.

When purchased, the structures on Robison Ranch were in very poor condition, and none were habitable. Petitioners constructed Robison Ranch's core operating buildings. They acquired the equipment necessary to plant and harvest hay, as well as tractors, loaders, road maintenance equipment, and trucks and trailers for transporting livestock and supplies. The first structures petitioners built were a horse barn, a small cow barn, and corrals for handling the livestock.

Petitioners also built a woodworking shop and a cement silo so that work could be done on site. In 2005 petitioners constructed a house on the property where they would stay when they were at the ranch. Petitioners later sold certain heavy equipment and trucks that were used to build the infrastructure to reduce unnecessary costs. Petitioners also purchased additional grazing permits and water rights, and they improved their hay production in an effort to grow enough hay to support all of the ranch's livestock.

**[*8]** Petitioners' Horse Activity

Initially petitioners focused Robison Ranch's business on the raising and breeding of Paint Horses. In approximately 2000, after the Paint Horse business proved unsuccessful, petitioners decided to shift to the raising and breeding of Quarter Horses, a more established breed. Petitioners were not able to make a successful business with the Quarter Horses and ultimately abandoned the horse selling and showing business. During the years in issue petitioners sold almost all of their horses not suited for cattle ranching.

Petitioners' Cattle Ranching Activity

Also in approximately 2000 petitioners shifted their focus to cattle ranching. During the years in issue petitioners sought to raise bulls and heifers as seedstock for other ranchers as well as to become a supplier of grass-fed beef.

When forming Robison Ranch, petitioners consulted with their accountant, a ranch attorney, other ranch owners, and trainers and breeders, as well as a local veterinarian, Dr. Verland King. King was a local expert regarding brisket disease. At high elevations cattle are at risk of brisket disease, which causes fluid accumulation in a cow's lung that can then cause it to suffocate. A cow with a low pulmonary artery pressure score (PAP score) indicates an animal with a greatly reduced risk of brisket disease. Because of Robison Ranch's high elevation,

[*9] petitioners sought to purchase and breed cattle with low PAP scores. Petitioners worked with King to test the PAP scores of Robison Ranch's registered cattle. King kept the PAP score records.

Petitioners also kept livestock records. The ranch manager was in charge of creating and maintaining these records. Robison Ranch's data allowed them to calculate the total cost of the herd. Robison Ranch also tracked certain expected progeny differences (EPD) of its herd but became more specific about the EPD data it collected beginning in 2010. EPD data is used as a prediction of how future progeny of each animal are expected to perform relative to the progeny of other animals in the breed or herd. EPDs are expressed in units of measure for the trait, such as pounds for birth weight. Robison Ranch also registered their cattle with the American Angus Association, which provided an online database in which some of Robison Ranch's livestock data was kept.

OPINION

Respondent determined that petitioners' ranching activity was not an activity engaged in for profit within the meaning of section 183 and disallowed the loss deductions relating to Robison Ranch that petitioners claimed on their Schedules E. Petitioners counter that they engaged in the ranching activity with an intent to realize a profit. Respondent alternatively argues that if petitioners are

**[*10]** found to be engaged in the ranching activity with an intent to realize a profit, their loss deductions should be limited by the passive loss limitations of section 469.

The arguments made by the parties through counsel are tainted by extreme views of the strength of their respective positions and attacks on the motives and credibility of their opponent(s). They view the facts objectively only with respect to the penalties that respondent conceded. We do not agree entirely with any of those arguments. Petitioners appeared sincere and reasonable in their testimony. The weakness in their position regarding the section 183 issue is primarily the indisputable history and magnitude of losses, despite reduced losses during the years in issue, and whether petitioners can expect to recoup them. But for their financial position, these losses could not be afforded. At this point petitioners are trying to minimize losses, but to prevail they must show a profit objective.

In addition to the section 183 analysis we address respondent's alternative argument that section 469 limits petitioners' loss deductions for the years in issue. That is, even if petitioners have adequately shown a profit objective, the absence of reliable records is most obvious with respect to this issue, and petitioners' reply brief barely touches on respondent's arguments in that regard.

**[*11]** I.    Burden of Proof

Neither party discusses the burden of proof at length.  Respondent cites the presumption of correctness, Rule 142(a), and Welch v. Helvering, 290 U.S. 111, 115 (1933), for the general rule, which is that the Internal Revenue Service's determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving them erroneous.  With respect to deductions, the taxpayer almost always has that burden.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a).  If section 7491(a) had been raised, the lapses in petitioners' recordkeeping would seem the primary impediment to shifting the burden of persuasion.  The burden remains on petitioners.

II.    Section 183

Under section 183(a), if an activity is not engaged in for profit, no deduction attributable to that activity is allowed except to the extent provided by section 183(b).  In relevant part, section 183(b) allows those deductions that would have been allowable had the activity been engaged in for profit only to the extent of gross income derived from the activity (reduced by deductions attributable to the

**[*12]** activity that are allowable without regard to whether the activity was engaged in for profit).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." For expenses to be deductible under section 162, Trade or Business Expenses, or section 212, Expenses for Production of Income, and not subject to the limitations of section 183, taxpayers must show that they engaged in the activity with the primary objective of making a profit. Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), aff'g T.C. Memo. 1993-634.

The expectation of profit need not be reasonable, but the taxpayer must conduct the activity with the actual and honest objective of making a profit. Hildebrand v. Commissioner, 28 F.3d 1024, 1026-1027 (10th Cir. 1994), aff'g Krause v. Commissioner, 99 T.C. 132 (1992); Keanini v. Commissioner, 94 T.C. 41, 46 (1990). Because petitioners were the only partners in Robison Ranch, we need not separately determine the intent at the partnership level. Greater weight is given to objective facts than to a taxpayer's self-serving statement of intent. King v. Commissioner, 116 T.C. 198, 205 (2001); sec. 1.183-2(a) and (b), Income Tax Regs. Evidence from years subsequent to the years in issue is relevant to the

[*13] extent it creates inferences regarding a taxpayer's requisite profit objective in earlier years.  See Hoyle v. Commissioner, T.C. Memo. 1994-592; Smith v. Commissioner, T.C. Memo. 1993-140.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be weighed when considering whether a taxpayer is engaged in an activity for profit.  These factors include the following:  (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned from the activity; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved in the activity.  All facts and circumstances are to be taken into account, and no single factor or mathematical preponderance of factors is determinative.  Westbrook v. Commissioner, 68 F.3d at 876; Hildebrand v. Commissioner, 28 F.3d at 1027.  We address the most relevant factors in determining petitioners' intent.

**[*14]** A.    <u>Manner in Which Activity Is Conducted</u>

Carrying on an activity in a businesslike manner, such as by maintaining complete and accurate books and records, conducting the activity in a manner similar to other activities of the same nature that are profitable, and making changes in operations to adopt new techniques or abandon unprofitable methods, is a factor that may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Businesslike conduct is characterized by careful and thorough investigation of the profitability of a proposed venture, monitoring of a venture in progress, and attention to problems that arise over time. See <u>Ronnen v. Commissioner</u>, 90 T.C. 74, 93 (1988); <u>Taube v. Commissioner</u>, 88 T.C. 464, 481-482 (1987).

While a taxpayer need not maintain a sophisticated cost accounting system, the taxpayer should keep records that enable the taxpayer to make informed business decisions. See <u>Burger v. Commissioner</u>, 809 F.2d 355, 359 (7th Cir. 1987), <u>aff'g</u> T.C. Memo. 1985-523. For a taxpayer's books and records to indicate a profit motive, the books and records should enable a taxpayer to cut expenses, increase profits, or evaluate the overall performance of the operation. See <u>Abbene v. Commissioner</u>, T.C. Memo. 1998-330. Petitioners kept many financial and administrative records, such as weekly meeting minutes, employment contracts,

**[\*15]** payroll tax returns, insurance policies and payments, and formal leases for employees who lived on Robison Ranch.

Although petitioners' records were voluminous, respondent argues that petitioners' administrative and financial recordkeeping was more akin to a conscious attention to detail than to something used to analyze expenses or improve profitability.  See Golanty v. Commissioner, 72 T.C. 411, 430 (1979), aff'd, 647 F.2d 170 (9th Cir. 1981).  Petitioners contend that R. Robison used QuickBooks' profit and loss statements to monitor the ranch's finances and cut costs.  We believe petitioners used them for the important purposes of cutting expenses, increasing profits, and evaluating the overall performance of the operation.  See id.  However, there is no evidence that they used them to create budgets or make income projections, which would have been advantageous and further indicative of operating in a businesslike manner.  See Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309; Foster v. Commissioner, T.C. Memo. 2012-207, slip op. at 14.

Petitioners also kept multiple records regarding their cattle though these records varied during the years in issue.  Robison Ranch's animal records significantly improved with the hiring of Dahl as ranch manager in 2012, particularly in regard to EPD data, which petitioners had begun to track better in

[*16] 2010. Petitioners were able to use their cattle records to make meaningful projections as well as make educated decisions in regard to cattle purchases and sales, current and future. The improved data recording during the years in issue evidences petitioners' increasingly businesslike approach to Robison Ranch's cattle activity.

Respondent also argued that petitioners had no written business plan for Robison Ranch. Numerous court opinions mention that a businesslike operation often would involve a business plan. See, e.g., Wesinger v. Commissioner, T.C. Memo. 1999-372. Petitioners retroactively created business plans for the years in issue, which were largely narratives of the actions petitioners took during those years. The fact that petitioners had no written business plan does not negate a profit motive, as a business plan can be evidenced by actions. See Annuzzi v. Commissioner, T.C. Memo. 2014-233, at *16; Phillips v. Commissioner, T.C. Memo. 1997-128 (stating that written financial plan not required for 32-horse farm where business plan was evidenced by action). Nevertheless, a business plan likely would have aided petitioners in creating analyses for the future financial management or planning of the activity. See Foster v. Commissioner, T.C. Memo. 2012-207, slip op. at 14.

**[*17]** Maintaining an additional bank account for the activity separate from a taxpayer's personal finances is indicative of an activity being carried on in a businesslike manner. See Wayts v. Commissioner, T.C. Memo. 1992-82 (finding horse racing and breeding activity was carried on in a businesslike manner because it had a separate bank account) (citing Pryor v. Commissioner, T.C. Memo. 1991-109). Petitioners' separate maintenance of their personal finances and Robison Ranch's are indicative of operating in a businesslike manner.

Perhaps the most important indication of whether an activity is being performed in a businesslike manner is whether the taxpayer implements methods for controlling losses, including efforts to reduce expenses and generate income. See Dodge v. Commissioner, T.C. Memo. 1998-89, aff'd without published opinion, 188 F.3d 507 (6th Cir. 1999). Petitioners contend that they made changes to their operating methods, adopted new techniques, and abandoned unprofitable methods that contributed to their losses. The record supports this contention. Petitioners made changes in their ranching activity when they realized that certain operations would not be profitable, changing Robison Ranch's operation two times--from Paint Horses, to Quarter Horses, to a registered cattle herd. Cf. Williams v. Commissioner, T.C. Memo. 2018-48, at *24-*25 (finding cattle operation was not carried on in a businesslike manner because taxpayer did not

[*18] make changes or transition his operation for 10 years despite continued losses).

Petitioners also sought to reduce expenses by obtaining increased water rights, producing their own hay, purchasing additional grazing permits, selling unnecessary equipment, and increasing the tracking and recording of EPD data for their cattle herd. All of these decisions were business decisions designed to reduce expenses and were not made merely on the basis of petitioners' whim or fancy. See Welch v. Commissioner, T.C. Memo. 2017-229, at *31. Petitioners were able to reduce their expenses, which led to a decrease in their net losses for the years in issue. Petitioners' implementation of operating changes to combat continued losses indicates their intention to make a profit.

After carefully considering the evidence, we conclude that this factor favors petitioners.

B.      Expertise of the Taxpayer or His/Her Advisers

The taxpayers' expertise, research, and study of an activity, as well as their consultation with experts, may be indicative of a profit motive. See sec. 1.183-2(b)(2), Income Tax Regs. S. Robison has a family background in ranching and farming although he had never previously operated a ranch. Petitioners consulted with persons who were knowledgeable about ranching, including a ranch attorney,

[*19] other ranch owners, trainers and breeders, and their veterinarian. See Givens v. Commissioner, T.C. Memo. 1989-529 (a profit objective was indicated where the taxpayer sought and acquired advice in all aspects of Tennessee Walking Horse breeding from experienced owners, trainers, and a veterinarian). Petitioners also sought advice regarding the business elements of starting Robison Ranch from their accountant. In the face of mounting losses, it would have been prudent to seek further business advice; however, we believe this factor favors petitioners.

### C. Taxpayers' Time and Effort Devoted to the Activity

The taxpayers' devotion of much of their personal time and effort to carrying on an activity may indicate a profit motive, particularly if the activity does not involve substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs. A profit motive may also be indicated if a taxpayer "employs competent and qualified persons to carry on such activity." Id. Petitioners hired professionals to manage Robison Ranch, employing a full-time ranch manager and a ranch hand during the years in issue, both of whom lived on site. Petitioners also conducted weekly meetings with Robison Ranch employees. While Dahl was not an expert in registered Angus cattle ranching, nor had he managed a ranch previously, he was experienced in cattle ranching, having been raised on an

[*20] unregistered cattle ranch.  Further, petitioners made use of a local veterinarian who was an expert regarding brisket disease and the effects of high altitudes on cattle.  This factor favors petitioners.

D.    Expectation That the Activity's Assets May Appreciate

An expectation that assets used in the activity will appreciate may indicate a profit motive even if the taxpayers derive no profit from current operations.  Id. subpara. (4).  However, a profit objective may be inferred from such expected appreciation of the activity's assets only where the appreciation exceeds operating expenses and is sufficient to recoup the accumulated losses of prior years.  See Golanty v. Commissioner, 72 T.C. at 427-428; Hillman v. Commissioner, T.C. Memo. 1999-255.

Respondent argues that petitioners' objective must include recoupment of all of Robison Ranch's past losses.  This expectation is too high.  See Welch v. Commissioner, at *35.  "An overall profit is present if net earnings and appreciation are sufficient to recoup the losses sustained in the 'intervening years' between a given tax year and the time at which future profits were expected." Helmick v. Commissioner, T.C. Memo. 2009-220, slip op. at 27 (citing Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967)). Therefore, the question is not whether petitioners would recoup all of Robison

[*21] Ranch's losses but whether they would recoup the losses between the years in issue and the "hoped-for profitable future." See id. at 28.

Petitioners did not provide a valuation of Robison Ranch. There is not enough evidence in the record to determine the current value of or petitioners' adjusted basis in the ranch property, and we are therefore unable to determine the amount of appreciation, if any. Accordingly, this factor is neutral.

E.    Taxpayers' History of Income or Loss From the Activity

A history of continued losses with respect to the activity may indicate the lack of profit motive. See sec. 1.183-2(b)(6), Income Tax. Regs. While a series of losses during the startup stage of an activity may not necessarily indicate a lack of profit motive, a record of large losses over many years is persuasive evidence that a taxpayer did not have such a motive. See Golanty v. Commissioner, 72 T.C. at 426. An activity's cumulative losses should not be of such a magnitude that an overall profit on the entire operation, including recoupment of past losses, could not possibly be achieved. Bessenyey v. Commissioner, 45 T.C. at 274.

Petitioners realized no profits whatsoever in 16 years of engaging in their ranching activity. Petitioners contend that the years in issue are the startup stage for their cattle ranching activity. See Burrus v. Commissioner, T.C. Memo. 2003-285 (finding that losses incurred in the first six years of a cattle activity occurred

[*22] during its startup stage).  However, petitioners began their cattle operation in approximately 2000; thus the years in issue are beyond the startup stage.

Further, despite reduced expenses and increased profits during the years in issue, petitioners produced no detailed or concrete plans as to how to further reduce their losses or as to when they expect to make a profit.  The possibility of a speculative profit is insufficient to outweigh the absence of profits for a sustained period of years.  See Chandler v. Commissioner, T.C. Memo. 2010-92 (the possibility of a speculative profit did not outweigh more than 20 years of losses reported for the taxpayer's horse activity).  This factor strongly favors respondent.

F.    Taxpayers' Financial Status

Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit.  See sec. 1.183-2(b)(8), Income Tax Regs.  This is particularly true if the losses from the activity generate substantial tax benefits.  Golanty v. Commissioner, 72 T.C. at 429.  A taxpayer with substantial income unrelated to the activity can more readily afford a hobby.  See Wesley v. Commissioner, T.C. Memo. 2007-78.  Petitioners' substantial income from S. Robison's career has allowed them to continue their ranching activity in spite of 16 years of losses.  Further, the activity has also generated tax savings in the form

**[*23]** of net losses that offset that income, resulting in much smaller after-tax burden for the years in issue. This factor favors respondent.

### G. Conclusion

This is a very close case, and our determination for the years in issue is limited to the facts found for those years. After weighing all the facts and circumstances in the light of the relevant factors, we conclude that petitioners engaged in their ranching activity for the years in issue with the requisite profit objective. Petitioners' activities cannot be characterized as a "hobby" during those years. Petitioners' efforts to reduce Robison Ranch's expenses and the resulting decrease in petitioners' net losses during the years in issue are most persuasive. Accordingly, we reject respondent's disallowance of the loss deductions relating to the ranching activity under section 183.

### III. Section 469 Passive Activity

We must now consider whether petitioners' losses from Robison Ranch were passive under section 469. Loss deductions from a passive activity are generally allowed for the years in which the losses are sustained only to the extent of passive activity income. Sec. 469(a)(1)(A), (d)(1). In general, a passive activity is a trade or business in which the taxpayer does not materially participate.

**[\*24]** Sec. 469(c)(1).  A taxpayer materially participates in an activity when he or she is involved on a regular, continuous, and substantial basis.  Sec. 469(h)(1).

A passive activity loss is the amount by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year.  Sec. 469(d)(1).  Passive activity losses are suspended until the taxpayer either has offsetting passive income or disposes of the taxpayer's entire interest in the passive activity.  Sec. 469(b), (g).

Application of section 469 might permit petitioners a future use of the accumulated but disallowed losses, particularly if they are able to sell the ranch at the currently listed price.  Sec. 469(b), (g).  Petitioners' activities in operating through the ranch manager suggest characterization of the activity as passive--that of an investor.  That was the observation of the Court at the conclusion of the trial, and our impression has not been altered.

In general, a taxpayer is treated as materially participating in a trade or business if the taxpayer is involved in the operations of the trade or business on a regular, continuous, and substantial basis.  Sec. 469(h)(1).  A taxpayer can establish material participation by satisfying any one of seven tests provided in the regulations.  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); see Miller v. Commissioner, T.C. Memo. 2011-219; Bailey

**[*25]** <u>v. Commissioner</u>, T.C. Memo. 2001-296.  Of these, the two following tests are most relevant to the case:

> (1) The individual participates in the activity for more than 500 hours during such year;

> \*      \*      \*      \*      \*      \*      \*

> (7) Based on all of the facts and circumstances \* \* \* the individual participates in the activity on a regular, continuous, and substantial basis during such year.

Sec. 1.469-5T(a), Temporary Income Tax Regs., <u>supra</u>.

Material participation of a taxpayer in an activity is determined separately for each taxable year, and the taxpayer generally has the burden of proving material participation.  <u>See</u> sec. 469(a); <u>see also</u> <u>Harrison v. Commissioner</u>, T.C. Memo. 1996-509.  In determining whether a taxpayer materially participates, the participation of the spouse of the taxpayer shall be taken into account.  Sec. 469(h)(5).  We therefore treat petitioners as a unit for the purposes of participation.

Generally, any work done by an individual in connection with an activity in which he or she owns an interest at the time the work is done is treated as participation of the individual in the activity.  Sec. 1.469-5(f)(1), Income Tax Regs.  However, activity performed in an individual's capacity as an investor does

**[\*26]** not qualify as participation in an activity, unless the individual is directly involved in the day-to-day management of the activity. Sec. 1.469-5T(f)(2)(ii)(A) and (B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Investor-related activities not qualifying as material participation include: (1) studying and reviewing financial statements or reports on operations; (2) preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and (3) monitoring the finances or operations of the activity in a nonmanagerial capacity. Id.

A.     500-Hour Test

The extent of an individual's participation in an activity may be established by any reasonable means. Id. subpara. (4). Contemporaneous daily time reports or logs are not required. Id. While the regulations permit some flexibility with respect to the evidence required to prove material participation, we are not required to accept postevent "ballpark guesstimates", nor are we bound to accept the unverified, undocumented testimony of taxpayers. See Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185; Shaw v. Commissioner, T.C. Memo. 2002-35; Scheiner v. Commissioner, T.C. Memo. 1996-554.

The records petitioners introduced for the years at issue provide a broad overview of their time spent at Robison Ranch. These records predominantly

[*27] appear to be estimates prepared noncontemporaneously, with the exception of the minutes kept from the weekly conference calls petitioners had with ranch employees. The annual log petitioners provided for each tax year reports hours assigned to activities years after the fact, in preparation for trial, and based solely on their judgment and experience as to how much time the activities must have taken them.

The weekly minutes indicate that petitioners were typically working on activities such as minutes, payroll, taxes, and house issues. The annual logs also include similar activities, such as generating payroll, paying bills, communicating with staff members, and the hiring and firing of ranch employees. Petitioners' weekly minutes and annual logs also fail to show what specifically petitioners did day to day and exactly how much time they spent on matters directly relating to the ranch, making it impossible to conclude that this activity was conducted outside of an investor-type capacity. See Iversen v. Commissioner, T.C. Memo. 2012-19.

We do not doubt that while away from Robison Ranch petitioners spent time on ranch activities, talking on the telephone to the ranch manager and employees, reading articles on cattle ranching, receiving bills and correspondence, and maintaining the financial and business records. Also, we acknowledge that

[*28] while at Robison Ranch petitioners participated in and assisted with the cattle operation, ranch maintenance, and improvements. However, a very significant portion of the time petitioners spent on Robison Ranch activities appears to have been in the capacity of investors not involved in the day-to-day activities or management. These hours cannot be counted toward the 500-hour test of subparagraph (1), nor towards participation on the regular, continuous or substantial basis required by subparagraph (7), discussed below. See sec. 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., supra.

B.     Facts and Circumstances Test

Under section 1.469-5T(b)(2)(ii)(A) and (B), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), a taxpayer's management activities under the facts and circumstances test shall not be taken into account if another person also receives compensation for management services relating to the activity or if another person spends more time performing management services relating to the activity than the taxpayer. The presence of a full-time paid ranch manager at the ranch for all of the years at issue disqualifies petitioners' time working on Robison Ranch management services from counting towards their participation. As a result, petitioners do not meet the facts and circumstances test under subparagraph (7). See sec. 1.469-5T(a), Temporary Income Tax Regs., supra.

**[\*29]** C.    <u>Conclusion</u>

The weight of the evidence before us does not establish that during the years at issue the majority of hours petitioners spent were hours spent in a capacity other than as investors.  After the hours attributable to investor types of activities are subtracted, and in the light of the fact that Robison Ranch employed a full-time ranch manager, petitioners did not spend the required 500 hours on the Robison Ranch activity, nor were they engaged on a regular, continuous, and substantial basis, as required under section 469 and the related regulations.

We conclude that petitioners did not materially participate in Robison Ranch and it was a passive activity.  Petitioners' losses reported for the years at issue with respect to the ranching activity are subject to the passive loss limitations imposed by section 469, and these losses are suspended until petitioners either have offsetting income or dispose of their entire interest in Robison Ranch.

In reaching our conclusions, we have considered all arguments made by the parties and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[*30]**  To reflect the foregoing,

Decisions will be entered

under Rule 155.
